**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| ROBERT FIRTH, FAN ACTION, INC., | ) | |
| BLUE AND GOLD.COM, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | CAUSE NO. 3:10-CV -075 |
| | ) | |
| YAHOO! INC. dba: RIVALS.COM, | ) | |
| TIM PRISTER, JACK FREEMAN, | ) | |
| PETE SAMPSON, SHANNON TERRY, | ) | |
| BOBBY BURTON, | ) | |
|     Defendants. | ) | |

## DEFENDANT YAHOO! INC.'S MOTION TO DISMISS

Defendant Yahoo! Inc. ("Yahoo!") hereby submits their Memorandum of Points and Authorities in Support of Motion to Dismiss.

### I.      INTRODUCTION

Plaintiffs' Complaint asserts ten Counts ranging from breach of contract to RICO. Those ten counts rely on conduct that occurred long ago--as far back as 2001. And, while the Complaint is lengthy, it is not long on facts as one might expect from allegations that reach back nine years. Rather than making cohesive factual allegations, this Complaint is made up primarily of exhibits and repetitive prayers for relief. The result is a very confusing, imprecise and muddled set of allegations that collectively fail to state any claim for relief. This is particularly true as to defendant Yahoo!. Other than in the caption, Yahoo! is not once mentioned in the Complaint.

So incomprehensible are the allegations that it is impossible to decipher even the precise claims for relief alleged. While each Count is titled, the factual allegations do not support the legal theories that Plaintiffs assert. For example, several of Plaintiffs' Counts are styled as variations of trade secret misappropriation. Plaintiffs do not, however, identify any alleged trade secrets in the Complaint. To the contrary, the gravamen of Plaintiffs' Complaint appears to be "co-opting" domain names, misdirecting web traffic and maybe infringing copyrights and/or

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

trademarks (although no copyrighted material or trademarks are actually identified in the Complaint). Domain names, trademarks and copyrights, however, are not trade secrets because they derive economic benefit only from being known. Thus, it is unclear what Plaintiffs are trying to allege.

More perplexing are the contract and RICO claims. Plaintiffs do not identify a contract to which Yahoo! was a party. Nor do they allege any conduct by Yahoo! that constitutes a breach. Similarly, Plaintiffs do not identify the alleged RICO enterprise, the persons liable, the predicate acts of racketeering or when any such act occurred. And, Plaintiffs make passing references to the theft of "technologies" and "copyright infringement" but the Complaint nowhere elaborates. In short, Plaintiffs set forth a formulaic recitation of RICO's elements, but with absolutely no supporting facts.

To further complicate matters, the Complaint on its face establishes that most of Plaintiffs' claims are time-barred. Trade secret claims are subject to a three year statute of limitations under the Indiana Trade Secrets Act, which preempts all causes of action based on trade secret misappropriation. To the extent they are not pre-empted, conversion and intentional infliction are subject to a two year statute. The Complaint and the exhibits thereto, however, make it clear that Plaintiffs knew of the conduct they challenge here, and that the conduct caused them their alleged injury, at the latest by November 2006. Because the Complaint was filed in February 2010, at least seven of the ten counts are time barred on their face.

So, perhaps the Complaint is one for trademark or copyright infringement. Perhaps, it is one for misappropriation of trade secrets. Or, perhaps, it is for something else entirely. All that is clear, however, is that of those Counts that are not facially time-barred, none states a claim against any defendant, and the Complaint therefore should be dismissed.

## II.        SUMMARY OF THE COMPLAINT

The below represents an attempt to read the sparse and disjointed factual allegations together with the content of the exhibits to the Complaint to come up with a somewhat coherent factual summary, which should be assumed true only for purposes of this motion. The

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

Complaint's exhibits were not numbered or otherwise designated for identification.

Accordingly, Yahoo! has appended them to this Brief for ease of reference.  Additionally, the

Plaintiffs stopped numbering the paragraphs of the Complaint at the RICO Count, so citations to

the allegations of the RICO Count are made to page numbers rather than paragraph numbers.

### A.      The Parties

This lawsuit apparently involves two competing sports websites that report on University

of Notre Dame sports.  According to the Complaint, Plaintiff Fan Action, Inc., which was (or is)

owned by plaintiff Robert Firth, owned a subscription based premium website, plaintiff

blueandgold.com (collectively "Plaintiffs" unless otherwise noted).  Verified Complaint ("Cpt.")

¶ 1; Network Affiliate Agreement, attached to the Complaint as an exhibit and attached hereto

for ease of reference as Exhibit A.  Plaintiff  blueandgold.com was a website devoted to

University of Notre Dame sports.  Defendant Rivals.com ("Rivals") was (is) also a "sports" page

dedicated to college sports generally.  Exh. A.  In 2001 and again in 2003, Plaintiffs entered into

a two-year network agreement with defendant Rivals.  Cpt. ¶¶ 1-3; Exh. A.  The 2003 contract is

attached as an exhibit to the Complaint and explains that through the agreement, Plaintiffs'

websites - notredame.rivals.com, goblueandgold.com and blueandgold.com - were to be

incorporated into and become part of the Rivals network in exchange for a share of the

subscription and advertising revenue that they generated.  *See*, Exh. A, ¶¶ 1-6 and related

exhibits.

Individual defendants Tim Prister, Pete Sampson and Jack Freeman (collectively with

defendants Shannon Terry and Bobby Burton the "Individual Defendants," unless otherwise

indicated) were sports writers and the "web master" respectively for Plaintiffs.  Cpt., ¶ ¶10, 14,

15.  According to the exhibits, Prister was, at least for some period of time, an employee and

editor of Fan Action, Inc.  *See, e.g.*, Employment and Non-Compete Agreement dated June 14,

2002, attached as an exhibit to the Complaint and attached hereto for ease of reference as Exhibit

B.  In August, 2004, Mr. Prister's status changed to independent contractor.  *See*, Independent

Contractor Agreement dated August 30, 2004, attached hereto for ease of reference as Exhibit C.

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

The only information pertaining to Individual Defendants Pete Sampson and Jack Freeman is in paragraphs 12 and 15 of the Complaint, where Plaintiffs explain that Freeman was the "web master" and Sampson was a "writer."  Cpt., ¶¶ 12, 15.

The Complaint alleges that defendant Shannon Terry was Rivals' CEO and Bobby Burton was his assistant.  Cpt., ¶ 16.  Yahoo! is mentioned nowhere in the Complaint.  Solely for the Court's edification, however, Yahoo! purchased all of the shares of JBS Sports, Inc. dba Rivals.com in June 2007.

### B.     Substantive Allegations and Claims for Relief

Plaintiffs' Complaint sets forth ten causes of action ("Counts"): Misappropriation of Trade Secret, Unfair Competition, Breach of Contract, Unjust Enrichment, Conversion, Intentional Infliction of Emotional Distress, Malicious Interference with Employment Contract as to Defendants Prister and Freeman Only, Wrongful Appropriation of Customer List, and federal RICO.[1]  The Complaint's factual allegations, however, do not support any of these enumerated causes of action.  The factual gravamen of Plaintiffs' Complaint appears to be grounded in the alleged "co-opting" of Plaintiffs' domain names.  *See*, Cpt., ¶ 13.  More specifically, Plaintiffs allege that sometime in 2004, after they entered into the agreement with Rivals, Freeman "began switching domain names owned by BGI out of Fan Action's list of names and into other names or entities under his control. . . . "  Cpt., ¶ 12.  In 2005, Freeman, along with at least four other employees of Plaintiffs, quit their jobs and went to work for Rivals. Cpt., ¶ 15.  Between January 2005 and August 2005, Jack Freeman along with Pete Sampson, Tim Prister, Shannon Terry, and Bobby Burton began misdirecting Fan Action trademarked names and "cherry picking"  "BGI" owned web domains to point to Rivals' newly named Notre Dame website, "Irishillustrated.com". Cpt., ¶ 16. [2]

---

[1] Because Yahoo! is not named in Count VIII for Malicious Interference with Employment Contract, that Count is not discussed in this motion.

[2] "BGI" apparently stands for "Blue and Gold Illustrated."  *See,* Cpt., ¶ 16 (Blue and Gold Illustrated was universally recognized as BGI).  The Complaint contains no explanation of what

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

     In reading paragraph 16 of the Complaint together with some of the exhibits, it appears that Plaintiffs are inartfully pleading that defendants used their federally registered trademarks: "America's Foremost Authority on Fighting Irish Football" and "Fighting Irish Football Preview," and the acronym "BGI" to divert web traffic to the Rivals' site and to make it appear as though Rivals' competing sports website (Irish Illustrated) was actually Plaintiffs' Blue and Gold publication.  *See, e.g.*, Cpt., ¶ 16; email from Patrick Crumb to JC Firth dated February 28, 2006, attached hereto for ease of reference as Exhibit D; March 9, 2006, unsigned cease and desist letter referencing U.S. Trademark Registration Nos. 2,435,576 and 2,297,533 and pending application serial no. 78/809/066 from Baker and Daniels LLP to Greg Gough, attached hereto for ease of reference as Exhibit E; Letter dated April 21, 2006 from Baker and Daniels referencing same, attached hereto for ease of reference as Exhibit F; draft Letter dated November 28, 2006 from Barnes & Thornburg LLP to Rivals.com, attached hereto for ease of reference as Exhibit G.

     While most of the Counts are styled as some form of trade secret misappropriation, the above allegations sound more like trademark or copyright infringement.  Notwithstanding that Plaintiffs make no attempt to identify a trade secret in their Complaint, there are references to copyright and trademark infringement scattered throughout the Complaint and exhibits, but mostly in the prayers for relief.  *See, e.g.*,  Cpt., ¶ 16 (" . . . Shannon Terry and his assistant, Bobby Burton began the process of misdirecting Fan Action trademarked names . . ."); *e.g.*, Prayers to Counts I-IV, ¶ A (" Defendants  . . . be enjoined and restrained from . . . using the copyrighted trademarks, web domain and common law trademarks and copyrights that belong to Mr. Firth . . . ."); *e.g.*, Prayers to Counts I-IV, ¶ B (seeking $20 million in damages suffered "by reason of the infringing acts . . . ."); Complaint ¶ 30 (alleging individual Defendants "knowingly

---

BGI is, and it is unclear whether BGI and plaintiff blueandgold.com are one and the same.  In addition, the Complaint inconsistently alleges in paragraph 1 that plaintiff Robert Firth owned the domain names and trademarks at issue, but just a few paragraphs later alleges that BGI owned those domain names.  *See,* Cpt., ¶¶ 1, 12.

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

and intentionally exerted unauthorized control over the plaintiffs [sic] proprietary intellectual

property . . . .").

      Plaintiffs also attempt to allege a claim for violation of federal RICO. That Count

contains no factual allegations at all.  Instead, Plaintiffs simply recite, in a cursory manner, the

elements of various of the RICO statutory provisions.  *See*, Cpt., pp. 16-19.[3]   Plaintiffs lump all

defendants together and do not parse out the RICO "persons," the RICO "enterprise," or the

alleged predicate acts.  *See*, Cpt., p. 17 ("The primary cause of this action is a criminal *enterprise*

engaged in a *pattern of racketeering activity* . . ."), emphasis original; Cpt., p. 17 (" . . .

"defendants did acquire and/or maintain . . . an interest in or control of a RICO *enterprise* . . .").

To add to the confusion, Plaintiffs complain in the RICO count that Defendants "engage[d] in

copyright infringement" and "prevent[ed] and discourage[d] Plaintiffs from utilizing the

technologies they developed for their profit."  Cpt., p. 17.  But, as indicated above, Plaintiffs

state no claim for copyright infringement, and they do not describe this "technology" with any

particularity.

      Last, the Complaint includes a handful of allegations that are unrelated to any of the

pleaded causes of action. There are a few paragraphs devoted to the employment history of the

various parties and non-parties that seemingly have no connection to the Counts.  *See*,  Cpt., ¶¶

9, 10, 14, 17.  Additionally, paragraphs 20 through 23 appear to allege fraud and deceit, but they

are simply a recitation of the elements of the claim without any factual allegations to support

them.  Cpt., ¶¶ 20-23.  And, none of the Counts is for fraud or misrepresentation.

      In short, the Complaint is an incoherent rambling of allegations that state no cause of

action.  This is particularly true as to Yahoo!, which is not even mentioned in the body of the

Complaint.  And, the exhibits coupled with the sparse factual allegations establish that, even if

Plaintiffs could amend to allege facts sufficient to support their various Counts, the Counts

---

[3] Unfortunately, Plaintiffs stopped numbering the paragraphs of their Complaint at the RICO count. Accordingly, references will be made to page numbers.

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

would be barred by the applicable statutes of limitations.  Accordingly, the Complaint must be

dismissed and, as illustrated below, dismissal should be with prejudice because amendment

would be futile.

### III.    ARGUMENT

#### A.    PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO SET FORTH FACTUAL ALLEGATIONS SUFFICIENT TO SATISFY *TWOMBLY'S* PLAUSIBILITY STANDARD

Federal Rule of Civil Procedure 8 requires that a complaint contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).

While detailed factual allegations are not required, Rule 8 requires sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*,

550 U.S. 547, 555 (2007).  A claim has facial plausibility when the pleaded factual content

allows the court to draw a reasonable inference that the defendant is liable for the misconduct

alleged.  *Id.*, at 556.  Two principles underlie *Twombly*.  First, a court will not accept as true

threadbare recitals of a cause of action's elements, supported by conclusory statements rather

than facts.  *Id.*, at 555.  Second, whether a complaint states a "plausible" claim is context-

specific, requiring the reviewing court to draw on its experience and common sense. *Id.*, at 556.

*Twombly* held firmly that offering only "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action will not do."  *Id.*, at 555.

When the Court here weeds out the allegations that are not entitled to the assumption of

truth, it will find that little remains, and certainly not enough to nudge Plaintiffs' claims "across

the line from conceivable to plausible."  *Twombly*, 550 at U.S. 570.  The only factual allegations

are found in paragraphs 2-18.  As discussed above, however, those allegations, even assuming

their truth, do not support the Counts alleged and are not artfully pleaded.  The remainder of the

allegations are conclusions or "formulaic recitations" of the elements of the particular cause of

action.  The RICO Count, for example, contains no facts whatsoever.  Instead, Plaintiffs simply

recite the elements of a RICO claim in an incomprehensible and conclusory manner.  *See*, Cpt.,

pp. 16-20.  Last, and most importantly, there is not a single allegation attributing any conduct to

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

Yahoo! or even explaining Yahoo!'s involvement in this litigation. In fact, the only mention of Yahoo! is in the caption.

This Complaint does not satisfy Rule 8. It does not state any claim upon which relief can be granted against Yahoo! (or any defendant). And, even if Plaintiffs could amend to allege facts sufficient to support their causes of action, such amendment would be largely futile because most of the Counts are time-barred on their face. Accordingly, the Complaint should be dismissed and the time-barred claims should be dismissed with prejudice.

**B. ALL CLAIMS PREMISED ON TRADE SECRET MISAPPROPRIATION ARE TIME-BARRED AND FAIL AS A MATTER OF SUBSTANCE**

**1. To the Extent Counts I, II, IV, V, VII and VIIII [sic] Allege Trade Secret Misappropriation They Are Time-Barred**

Counts I (Misappropriation of A Trade Secret), II (Unfair Competition), IV (Unjust Enrichment), V (Conversion), VII (Disclosure of Trade Secrets), and VIIII [sic] (Wrongful Appropriation of Customer List) are largely incomprehensible. They are styled as variations of trade secret misappropriation claims, but neither the Complaint nor the exhibits identify any trade secret. To make matters worse, the Prayer for each of these Counts seeks remedies typical of copyright or trademark infringement, not trade secret misappropriation. Fortunately, this Court need not attempt to decipher the claims factually because, regardless of what they are substantively, they are time-barred.

Assuming that the Counts are, as Plaintiffs styled them, for trade secret misappropriation, they are subject to the three year limitations period of the Indiana Trade Secrets Act. Ind. Code 24-2-3-7; *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004). Further, assuming that the only conduct that Plaintiffs allege--domain name co-opting--could constitute trade secret misappropriation (which substantively it cannot, as discussed below), the Complaint establishes clearly that the challenged conduct began "by 2004 at the latest" and occurred again between January and August 2005. Cpt., ¶¶ 12, 16. The exhibits further establish that Plaintiffs were on notice of this alleged conduct, and likely fully aware of it, by February 28, 2006. *See*, Email

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

attached hereto as Exhibit D.  At worst, the exhibits establish that Plaintiffs were fully aware of it by April 21, 2006, when they instructed their lawyers to send cease and desist letters to Rivals. *See*, Exhibits E-G, attached hereto.  Thus, the three year statute of limitations had run by April 21, 2009 at the latest, and well before the Complaint was filed in February 2010.  Accordingly, Count I and all other Counts based on trade secret misappropriation are time-barred on their face.

> **2.      Even Absent the Statute of Limitations, Plaintiffs Fail to Plead the Essential Elements of Trade Secret Misappropriation**

Trade secret claims are governed by the Indiana Trade Secret Act.  24-2-3-1, *et. seq.* ("TSA").  The TSA defines a trade secret as:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code 24-2-3-2.

Count I, Count VII and Count VIIII [sic] purport expressly to assert some variation of trade secret misappropriation: Misappropriation of Trade Secret, Disclosure of Trade Secrets and Wrongful Appropriation of Customer List, respectively. These Counts all fail for the simple reason that Plaintiffs have not identified a trade secret anywhere in the Complaint.  The most specific of the allegations speak of "stolen" and "co-opted" domain names and other copyrighted and/or trademarked material (see, e.g., Cpt. ¶¶ 1, 7,12, 13, 16).  Domain names, copyright protected material and trademarked material do not fit the definition of a trade secret because they derive economic value only from being "generally known and readily ascertainable."  Thus, a domain and/or copyrighted/trademarked materials are not, by definition, trade secrets. Because the Complaint fails to identify anything falling within the statutory definition of a trade secret, it

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

fails, and Counts I, VI and VIIII [sic] must be dismissed.[4]

### 3.    Counts II, IV, V, VII, And VIIII [sic] Are Pre-Empted by the TSA

The TSA preempts all state law premised on trade secret misappropriation:

> The chapter displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law.

Ind. Code 24-2-3-1(b). Section 24-2-3-2(b) is interpreted broadly to preclude all state law claims premised on trade secret misappropriation. *See, Infinity Products, Inc. v. Quandt*, 810 N.E.2d 1028 (Ind. 2004)(holding claim for liability based on respondeat superior preempted by TSA because the doctrine conflicts with TSA's intent requirement). To the extent that Plaintiffs are attempting to assert some sort of trade secret misappropriation claim, as evidenced by Count I, the Counts for Unfair Competition, Unjust Enrichment, Conversion, Disclosure of Trade Secrets and Wrongful Appropriation of Customer List are preempted because all of them are based on the same factual allegations. Plaintiffs merely incorporate the first 24 paragraphs of the Complaint into each Count.[5] Accordingly, these Counts are governed by the TSA and must be dismissed.

### C.    TO THE EXTENT NOT PREEMPTED, THE CONVERSION CLAIM IS BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS

The statute of limitations for conversion is two years from the date the cause of action accrues. Ind. Code 34-11-2-4; *French v. Hickman Moving & Storage*, 400 N. E. 2d 1384, 1388

---

[4] Count VIIII [sic] is for misappropriation of a customer list, but there is no customer list identified in the Complaint, nor are there allegations describing the supposed misappropriation of a customer list.

[5] The Conversion Count (Count V) does allege that Defendants Terry and Burton "without authorization . . . knowingly and intentionally exerted unauthorized control over the plaintiffs [sic] proprietary intellectual property and the technology Mr. Firth developed . . . ." By and large, these allegations merely repeat the general allegations of paragraphs one through twenty-four. While there is a reference to converting "technology," this is the lone reference to such. There are no additional allegations explaining what technology was appropriated or when. Thus, it amounts to nothing for pleading purposes.

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

(Ind. App. 1980)(holding conversion governed by Ind. Code 34-11-2-4).  Under Indiana law, a

cause of action accrues generally "when a complete cause or right of action arises or when a

person becomes liable in an action."  *French* at 1388.  "This general rule has been interpreted to

mean that the statute commences to run when the injurious action occurs though the plaintiff

may not learn of the act until later."  *Id.*  Indiana, however, applies the discovery rule to the

accrual of tort claims.  Accordingly, "the cause of action of a tort claim accrues ... when the

plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had

been sustained as a result of the tortious act of another."  *Wehling v. Citizen's Nat'l Bank*, 586 N.

E. 2d 840, 843 (Ind. 1992).

It is clear from the face of the Complaint that Plaintiffs knew or reasonably should have

known of the alleged acts of conversion and concomitantly that they had been injured thereby

more than two years prior to the filing of the Complaint.  Plaintiffs make two specific factual

allegations to support their Conversion Count.  First, they allege that the Individual Defendants

"knowingly and intentionally exerted unauthorized control over the plaintiffs [sic] proprietary

intellectual property and the technology Mr. Firth developed . . ." while defendants Prister,

Freeman and Sampson were employed by plaintiff Firth.  Cpt., ¶ 30.  The Complaint makes

clear, however, that Prister, Freeman and Sampson worked for Firth only until approximately

May 2005.  Cpt., ¶ 15.  Additionally, the Complaint alleges that the asserted "conversion" of

Firth's intellectual property began "between January  2005 and August 2005 at the latest."  *Id.*

Last, the exhibits to the Complaint establish unequivocally that Plaintiffs knew or reasonably

should have known about this alleged conduct by at least February 28, 2006, when Firth received

an email from Partick Crumb pointing out the complained-of site re-direction.  *See*, Exhibit E

attached hereto.  In March 2006, Plaintiffs' lawyers drafted a cease and desist letter that they sent

to Rivals in April 2006, demanding that they stop misusing Plaintiffs' federally registered

trademarks:

> Through the internet addresses www.bgi.rivals and bgi.rivals.com,
> Rivals is using Fan Action's trademark in order to direct internet

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

> users to a competing Rivals website. In addition, Rivals is also
> using meta-tags on its site in order to influence search engines,
> such as Google.com to list Rival's [sic] website when a user does
> a search for "Blue and Gold Illustrated."

*See*, Exhibit E, attached hereto. Then, on November 14, 2006, Plaintiffs' lawyer sent a cease and

desist letter to Rivals and Prister regarding their alleged improper use of, among other things, a

federally trademarked tag line.  *See*, Exhibit G, attached hereto.  Last, Plaintiffs attach to their

Complaint a print-out of what appears to be an announcement of the launch of

IrishIllustrated.com.  It is dated August 19, 2005 and states clearly that IrishIllustrated is not

affiliated in any way with Blue & Gold Illustrated:

> When you logged on to the Rivals.com network today, you
> probably noticed something a little different about your favorite
> Notre Dame news website.  After a four-year partnership with
> Blue & Gold Illustrated, Rivals.com has decided to hire three of
> the magazine's staffers to cover the Notre Dame football program,
> basketball program and recruiting exclusively for you, the web
> subscriber.

*See*, "Welcome to IrishIllustrated.com," dated August 19, 2005, attached to Plaintiffs' Complaint

as an exhibit and attached hereto for ease of reference as Exhibit H.

It is clear, then, that Plaintiffs reasonably should have known, and likely did know, of the

challenged conduct no later than August 2005 when IrishIllustrated.com was published.  Even

reading the allegations in the light most favorable to Plaintiffs, they knew of the conduct and the

injury by March 9, 2006 when their lawyer drafted the first cease and desist letter.  Accordingly,

the statute of limitations for conversion ran at the latest in March 2008--nearly two years before

they filed their Complaint.  Thus, even to the extent that the claim is not preempted by the TSA,

it is clearly time-barred and should be dismissed with prejudice.

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

**D.    PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS SUBSTANTIVELY AND IN ANY EVENT IS TIME-BARRED**

**1.    Count VI Fails to Allege Facts Sufficient to State a Cause of Action Against Yahoo!**

The tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Cullison v. Medley*, 570 N.E. 2d 27, 31 (Ind. 1991)(defining tort of intentional infliction of emotional distress as "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another"); *Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005); *Lachenman v. Stice*, 838 N.E 2d 451, 456 (Ind. Ct. App. 2005). "It is the intent to harm the plaintiff emotionally which constitutes the basis for the tort of intentional infliction of emotional distress." *Cullison* 570 N.E.2d at 31. "The requirements to prove this tort are rigorous." *Lachenman*, 838 N.E.2d at 456. As explained aptly:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999)(quoting Restatement (Second) of Torts § 46, cmt. D). "Intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

kind." *Lachenman*, 838 N.E.2d at 457; *see*, *Lindsey v. DeGroot*, 898 N.E. 2d 1251, 1264 (Ind. Ct. App. 2009).

The allegations of Plaintiffs' Complaint do not come close to satisfying the requirements of the tort. First, Plaintiffs' Complaint is utterly devoid of any allegations that describe "extreme and outrageous" conduct. Simply diverting internet traffic, infringing a copyright or trademark, or breaching an employment agreement, without more, is clearly insufficient. Second, Yahoo! is not named specifically in the Count, and there are no allegations that purport to describe Yahoo!'s conduct. In fact, all of the events described in the factual allegations of the Complaint occurred between 2003 and 2006, well before Yahoo! had anything to do with Rivals. While a corporation can be held liable for intentional infliction of emotional distress under Indiana law, it is settled that a plaintiff must clearly allege that the entity *itself* engaged in extreme and outrageous conduct with the intent of causing harm because it is the intent to cause harm that forms the basis of the tort. *Lindsey*, 898 N.E.2d at 1264; *see*, *Tucker* 837 N.E.2d at 603 (dismissing claim against Diocese based on allegations that priest sexually molested plaintiff because plaintiff failed to allege Diocese's conduct, as opposed to the priest's, was intentional, extreme or outrageous). Here, while the allegations are quite vague, they seem to involve only the individuals. Accordingly, the intentional infliction count fails to state a claim against Yahoo! (or any defendant for that matter) and must be dismissed.

### 2.    Plaintiffs' Intentional Infliction Claim is Barred by the Two Year Statute of Limitations

The statute of limitations for intentional infliction of emotional distress is two years. Ind. Code §34-11-2-4; *Johnson v. Blackwell*, 885 N. E. 2d 25, 30 (Ind. App. 2008); *Feltmeier v. Feltmeier*, 798 N. E. 2d 75, 85 (Ill. 2003). While the discovery rule applies to this Count as well, it is clear from the Complaint that Plaintiffs knew or reasonably should have known of the conduct creating their alleged injury by August 2005. The Complaint indicates that the intentional infliction claim is based on the "co-opting" of domain names, possibly infringing federally registered trademarks and other conduct aimed at making it appear as though Blue &

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

Gold Illustrated had become Irish Illustrated.  Cpt., ¶ 16.  While this allegation is refuted flatly by Exhibit H, which states clearly that IrishIllustrated and Blue & Gold Illustrated were not the same, the fact is that IrishIllustrated launched in August 2005.  *See*, Exh. H.  The Complaint further establishes that Plaintiffs knew about the alleged domain co-opting at least by February 2006.  *See*, Exh. D.  And, Plaintiffs were drafting and sending cease and desist letters in March, April and November 2006 that addressed trademark infringement.  *See*, Exhs. E-G.  Thus, it is clear that Plaintiffs were fully aware of all of the conduct they allege more than three years ago and expressly contended that they were injured by it more than three years ago.  The Count for Intentional Infliction of Emotional Distress is clearly time-barred and should be dismissed with prejudice.

###        E.       PLAINTIFFS FAIL TO STATE A CONTRACT CLAIM AGAINST YAHOO!

Count III is for Breach of Contract.  The elements of a breach of contract claim are: (1) the existence of a contract; (2) defendant's breach of the contract; and (3) resulting damage. *McKeighen v. Daviess County Fair Bd.*, 918 N. E. 2d 717, 720-21 (Ind. Ct. App. 2009), *citing, Gatto v. St. Richard School, Inc.*, 774 N. E. 2d 914 (Ind. Ct. App. 2002).  Plaintiffs state no contract claim against Yahoo! simply because they have not identified any contract to which Yahoo! was a party.  The only contracts referenced in the Complaint are the two expired contracts between Plaintiffs and Rivals and the employment/independent contractor agreements with defendants Freeman, Prister and Sampson.  Yahoo! is not a party to any of these contracts and, in fact, all of them expired well before Yahoo! had any affiliation at all with Rivals.

Nor does the Complaint include any allegations describing Yahoo!'s supposed breach of a contract or damages caused by Yahoo!'s conduct.  Accordingly, Count IV fails to state a claim against Yahoo! and must be dismissed.

###        F.       PLAINTIFFS FAIL TO ALLEGE THE ESSENTIAL ELEMENTS OF RICO

Plaintiffs' last count is for violation of the federal RICO statute.  The *Twombly*

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

plausibility standard is particularly important in the context of a RICO claim because of RICO's vexatious and abusive nature. *See, e.g., Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44-45 (1st Cir. 1991)(dismissing RICO claims where "[t]he pleadings, though copious, [were] vague and inexplicit"). As the *Miranda* court remarked:

> [c]ivil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. . . . For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

*Id*. at 44 (*citations omitted*).

This RICO claim is clearly frivolous. RICO prohibits four specific types of conduct that is described in the four subdivisions of 18 U.S.C. § 1962. 18 U.S.C. § 1962(a)-(d). There are five elements, however, that are essential to stating a claim under any of the four RICO subdivisions: (1) a "person"; (2) an enterprise; (3) racketeering activity which (4) occurred in a pattern; and (5) damages. *H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 473, 440 (N. D. Ill. 1987). Plaintiffs' Complaint fails to allege facts sufficient to establish any of these elements. Accordingly, Plaintiffs have failed to state a claim under any subdivision of section 1962.

### 1.     Plaintiffs Fail to Identify the Involved "Persons"

"Person" is statutorily defined as "any individual or entity capable of holding a legal or beneficial interest in property . . . ." 18 U.S.C. § 1961(3). Even though the statutory definition of "person" is broad, it is critical that a plaintiff identify each "person" alleged to be liable under RICO because an entity or an individual can be a "person" or "enterprise" under RICO but they cannot be both. *H.G. Gallimore*, 652 F. Supp. at 440, *citing, Masi v. Ford City Bank & Trust*

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

*Co.*, 779 F.2d 397, 401-02 (7th Cir. 1985)(holding entity cannot be both "person" and "enterprise" under RICO); *U.S. v. DiCaro*, 772 F.2d 1314, 1319-20 (7th Cir. 1985)(holding individual can be either person or enterprise but cannot be both).  Thus, the liable "persons" must be identified in the complaint and "collectivizing 'defendants' in the alleged pattern of racketeering activity . . .  will not suffice." *Cashco Oil Co. v. Moses*, 605 F. Supp. 70, 71 (N. D. Ill. 1985).

Plaintiffs here simply lumped all of the defendants together in the RICO Count and made no effort to distinguish liable "persons" from any alleged enterprise.  *See, e.g.*, Cpt., p. 17 ("All defendants did acquire and/or maintain . . . an interest in or control of a RICO *enterprise* . . . ."), emphasis original; p. 18 ("from 2003 A.D. and ongoing, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts . . . .").  Because Plaintiffs do not identify the "persons," the RICO Count fails.

### 2.        Plaintiffs Fail To Identify a RICO "Enterprise"

Critical to a RICO claim is the existence of a RICO "enterprise" through which the racketeering is carried out.  "Enterprise" is statutorily defined as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  An "enterprise" thus can be either an entity or an association of individuals.  An "enterprise" cannot, however, be a pattern of racketeering activity--it must exist separate and apart from the conduct in which it engages.  *U.S. v. Turkette*, 452 U.S. 576, 583 (1981).

Structure is the key element of an "enterprise."  To withstand dismissal, Plaintiffs must allege an enterprise with three characteristics: (1) a common purpose; (2) continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering.  *H.G. Gallimore*, 652 F. Supp. at 440, *citing, U.S. v. Lemm*, 680 F.2d 1193, 1198-1201 (8th Cir. 1982); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995).

Plaintiffs do not identify any such RICO enterprise and, as noted above, do not even

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

distinguish among the several defendants.  Plaintiffs do nothing more than scatter the word "enterprise" throughout the RICO Count.  *See, e.g.*, Cpt., p. 16 ("this action is a criminal *enterprise* engaged in a *pattern of racketeering activity . . .*); p. 17 ("all defendants did acquire and/or maintain . . . an interest in or control of a RICO *enterprise* of individuals who were associated in fact . . . ."), all emphasis original.  These allegations are conclusory,  not well-pleaded and do not satisfy the enterprise requirement.

Some of Plaintiffs' allegations refer to an "association in fact."  *See*, Cpt., p. 17 (" . . . Defendants did acquire . . . an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect interstate commerce . . . .").  An association of individuals can constitute a RICO enterprise under certain circumstances. *Turkette*, 452 U.S. at 583.  An "association," however, must have a structure, and the plaintiff must plead facts sufficient to establish that a structure exists.  A group of people getting together to commit a pattern of racketeering activity is not an "association in fact." *U.S. v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996) (explaining "enterprise" requires more than a "pattern of racketeering activity"); *U.S. v. Neapolitan*, 791 F. 2d 489, 500 (7th Cir. 1986); *H.G. Gallimore*, 652 F. Supp. at 445 (dismissing complaint for failure to plead specifically elements of asserted association in fact's structure).  The Seventh Circuit requires specifically that plaintiffs plead and prove some kind of ascertainable "structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d at 644.

None of this is pleaded here. Plaintiffs fail to identify the critical "enterprise" component, whether entity or association in fact.  Thus, Count X fails.

### 3. Plaintiffs' Complaint Fails to Identify Any Predicate Acts of Racketeering, Let Alone Plead Them with the Required Specificity

Section 1961, subdivision (1) sets forth a long list of offenses that constitute "racketeering" activity. 18 U.S.C. § 1961(1).  The Seventh Circuit has made it clear that to state a RICO claim, the complaint must specify the nature of the predicate acts "to a degree that will

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

allow the defendants to comprehend the specific acts to which they are required to answer . . . ."
*Ray v. Karris*, 780 F. 2d 636, 645 (7th Cir. 1985).

Plaintiffs do not identify the predicate acts upon which they rely.  Rather, they allege a
conclusion: "the predicate acts  . . . cluster around use of the United States electronic wire
systems to breach a contract, engage in copyright infringement . . . . Other predicate acts,
although *appearing* to be isolated events, were actually part of the overall conspiracy."  Cpt., p.
17, emphasis in original.  Nowhere, however, do Plaintiffs identify what these predicate acts
were, when they were performed, or by whom.  These allegations are clearly insufficient.

To the extent that the Complaint can be interpreted as attempting to allege some sort of
wire fraud as a predicate act, it still fails.  It is settled that Federal Rule of Civil Procedure 9,
subdivision (b) applies to RICO pleadings that rely on wire or mail fraud as predicate acts.  *H.G.
Gallimore*, 652 F. Supp. at 441, *citing, Haroco, Inc. v. Am. Natl. Bank and Trust Co.*, 747 F. 2d
384, 405 (7th Cir. 1984); *see, Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F. 3d 580, 597-99
(7th Cir. 2001)(applying Rule 9(b) to fraud based RICO predicate acts).  Rule 9, subdivision (b)
requires plaintiffs to plead the time, place, and particular contents of each instance of the alleged
fraud, the identity of the party engaging in each instance of alleged fraud and the consequences
of each instance of fraud.  *Id.*; *McKee v. Pope, Ballard, Shepard & Fowle, Ltd.*, 604 F. Supp.
927, 930 (N. D. Ill. 1985).  Where, as here, there are multiple defendants, the complaint must
specify the particular allegedly fraudulent acts of each.  *Id.; see Suburban Buick, Inc. v. Gargo*,
2009 WL 1543709 (N. D. Ill. 2009)(dismissing RICO claims for failure to plead consistently
with Rule 9(b)).

The present Complaint does none of this.  There are no specific allegations as indicated,
the predicate acts are not even identified.  Plaintiffs do not identify any particular instance of
fraud, let alone attribute any particular instance of fraud to any particular defendant.  The Count
falls far short of Rule 9(b)'s requirements and must be dismissed.

### 4.      Plaintiffs Do Not Allege a Pattern, or "Continuity"

The purpose of RICO is to combat organized, long-term crime.  *Midwest Grinding Co.,*

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

*Inc. v. Spitz*, 976 F. 2d 1016, 1019 (7th Cir. 1992).  The statute was never intended to be, and has

never been interpreted as, a means of obtaining treble damages for garden-variety state or federal

claims.  *Id*.  Accordingly, RICO requires proof of  a "pattern" of at least two offenses or

"predicate acts" occurring within ten years of each other.  18 U.S.C. § 1961(5).  In the Seventh

Circuit, "the predicate acts must be ongoing over an identified period of time so that they can

fairly be viewed as constituting separate transactions . . . ."  *Lipin Enterprises Inc. v. Lee*, 803 F.

2d 322, 324 (7th Cir. 1986).

Plaintiffs state the conclusion that Defendants "did cooperate jointly and severally in two

(2) or more of the RICO predicate acts that are itemized in the RICO laws . . . ."  Cpt., pp. 18, 19.

But, they do not allege what those acts were or when they occurred.  Thus, the Count fails to

plead the element of continuity and fails for this additional reason.

### 5.        Plaintiffs Fail to Allege Facts Sufficient to Support a Violation of Any Subdivision of 1962

As noted, the "person," "enterprise," "pattern" and "continuity" requirements are

common to all subdivisions of Section 1962.  Even if Plaintiffs had pleaded them adequately,

they still would not state a claim without further factual allegations to support at least one of the

subdivisions of section 1962.  Section 1962 prohibits four types of conduct.  Subdivision (a)

makes it unlawful to invest monies obtained through a course of racketeering activities in an

enterprise engaged in interstate commerce.  18 U.S.C. § 1962(a).  Subdivision (b) prohibits the

acquisition of control of an enterprise engaged in interstate commerce through racketeering

activities.  Subdivision (c), the most commonly litigated, prohibits any "person employed by or

associated with any enterprise engaged in . . .  interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity."  18 U.S.C. § 1962(c).  Last, subdivision (d) makes it unlawful to conspire

to violate subdivisions (a), (b) or (c).  18 U.S.C. § 1962(d).

Although there is some overlap among them, each of the four subdivisions has its own

essential elements.  18 U.S.C. § 1962(a)-(d); *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F. 2d

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

648, 655 (7th Cir. 1984) (overruled on other grounds). Accordingly, a RICO plaintiff must clearly identify the subdivision upon which the RICO claim is based and provide the factual support--merely referencing one or several subdivisions, or reciting their statutory language is not enough. *H.G. Gallimore* at 443; *Suburban Buick* at *7-8 (dismissing RICO claim where plaintiff failed to identify with clarity which subdivision had allegedly been violated).

But, that is precisely what Plaintiffs have done here. Count X references subdivisions (b), (c), and (d), but does so simply by reciting the statutory language:

- ". . . . all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect interstate commerce, all in violation of . . . §§ 1962(b)."

- "likewise, all defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a *pattern of racketeering activity*, all in violation of . . . 1962(c)."

- "At various times and places partially enumerated in Plaintiffs' Complaint, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. § 1962(c) and (d)."

Cpt. pp. 18-19. That is all there is. And, it is clearly insufficient to state a RICO claim under any subdivision.[6]

--------

[6] It appears that the RICO count may be time-barred as well. RICO has a four year statute of limitations that begins to run when plaintiff knew or should have known that the RICO predicate acts caused it injury. *Brontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). While the RICO count is incomprehensibly vague, it appears that the last alleged act of misconduct (misdirecting web traffic) occurred in August 2005. Cpt. ¶ 16. Setting aside the issue of whether this constitutes a predicate act for purposes of RICO, it appears from Exh. H (the published launch of IrishIllustrated.com) that Plaintiffs knew or should have known of the alleged acts as of August 2005. Accordingly, the four year statute would have run in August 2009 - six months before the Complaint was filed.

Robert Firth, et al v. Yahoo! Inc., et al
Cause No.: 3:10-CV-075

## IV.    CONCLUSION

Based on the foregoing law and argument, Yahoo! respectfully requests that the Complaint be dismissed for failure to state a claim.  Yahoo! further requests that the Court dismiss with prejudice all of the Counts based on trade secret misappropriation (Counts I, II, IV, V, VII and VIIII [sic]) because they are both preempted by the UTA and barred by the statute of limitations.  Alternatively, Counts I (Misappropriation of Trade Secret), V (Conversion), VI (Intentional Infliction of Emotional Distress), VII (Disclosure of Trade Secrets) and VIIII [sic] (Wrongful Appropriation of Customer List) should be dismissed with prejudice because they are time-barred on their face by the applicable statutes of limitations.


Date:   March 10, 2010                              Respectfully Submitted,

                                                                By:     /s/ Clay M. Patton
                                                                        Clay M. Patton; #21772-49
                                                                        Osan & Patton, LLP
                                                                        55 South Franklin Street
                                                                        Valparaiso, Indiana 46383
                                                                        (219) 462-0597
                                                                        (219) 462-8031 (fax)
                                                                        clay@osanpattonlaw.com
                                                                        Attorney for Defendant, Yahoo! Inc.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of March, 2010, a true and correct copy of the above and foregoing was served on the following interested parties in this action via the Court's CM/ECF system and/or by depositing same in the United States Mail, in envelope(s) properly addressed with sufficient postage affixed:

Doug Allen Bernacchi, 215 W. Eight St., P.O. Box 289, Michigan City, Indiana 46361
D. Alexander Fardon, H3GM, 315 Deaderick Street – Suite 1800, Nashville, TN 37238
Peter J. Agostino, 131 South Taylor Street, South Bend, Indiana 46601

                                                                 /s/ Clay M. Patton
                                                                Clay M. Patton
                                                                Attorney No. 21772-49