## EMPLOYMENT AND NON-COMPETE AGREEMENT

**THIS AGREEMENT** made and entered into as of the 14th day of June, 2002, between Fan Action, Inc., an Indiana corporation, hereinafter referred to as the "Corporation", and Timothy Prister, hereinafter referred to as the "Employee".

**NOW, THEREFORE,** in consideration of the mutual covenants and conditions contained herein and the Stock Option and Transfer Restriction Agreement of even date herewith, the parties hereto agree as follows:

1. **EMPLOYMENT.** The parties agree that the employment of the Employee shall continue as Editor of Blue & Gold Illustrated and to serve and perform such duties as may be assigned by the Corporation, in such a manner and at such time and place as the Corporation shall direct.

2. **DURATION OF AGREEMENT.** This Agreement shall be effective as of the 14th day of June, 2002, and shall remain in effect until the 30th day of June, 2003. Unless sooner terminated, this Agreement shall automatically renew for successive one (1) year terms. Notwithstanding anything to the contrary herein, either party may terminate this Agreement, at any time, upon two (2) weeks written notice to the other party and the Corporation may terminate this Agreement immediately for cause. As used herein "cause" shall mean (i) theft or embezzlement, or attempted theft or embezzlement, of money or tangible or intangible assets or property of the Corporation, perpetration or attempted perpetration of fraud, or participation in a fraud, or attempted fraud, on the Corporation; (ii) the Employee's inability to carry out effectively the Employee's duties and obligations to the Corporation; (iii) dishonesty in connection with dealings with the management of the Corporation; (iv) willful misconduct in the performance of the Employee's duties; (v) conviction of a felony; or (vi) a willful and material breach of this Agreement. The Employee shall be entitled to the compensation accrued as of the effective date of termination but shall have no other claim against the Corporation.

3. **OBLIGATIONS OF EMPLOYEE.** The Employee agrees to perform faithfully all of the duties assigned to him to the best of his abilities. The Employee further agrees that he will devote his full time and attention to the business of the Corporation during the working hours which are assigned to him by the Corporation, which shall be until otherwise agreed to by the parties, as worked over the prior employment period.

4. **COMPENSATION.** The Corporation agrees to pay to Employee, during the period of his employment hereunder as follows:

   a. **Base Salary.** The Employee shall be paid the sum of $73,000 annually in bi-weekly installments or other installments in accordance with the general practice of the Corporation.

1


EXHIBIT B

5. **EMPLOYEE BENEFIT PLANS.** The Employee shall be entitled to participate in any group medical or term life insurance plan, or any other Employee benefit plan which is presently existing or which may be established in the future by the Corporation, on the same terms and conditions as other employees of the Corporation.

6. **VACATIONS AND HOLIDAYS.** The Employee shall be entitled to paid vacations and holidays in accordance with the general practices of the Corporation, as amended from time to time, provided that vacations may not be accrued or carried forward into succeeding years.

7. **PROTECTION OF TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION.** The parties agree and acknowledge that by virtue of the Employee's position with the Corporation, the Employee will necessarily have full and complete access to all trade secrets, specialized marketing and distribution practices and techniques, financial information, subscriber information and other information, data and knowledge which may be of a confidential and sensitive nature, all of which the parties further agree are so vital to the continued success of the Corporation as to be protected against being disclosed or divulged by the Employee to persons not in the Corporations' employ, particularly those who compete with the Corporation in publishing and otherwise disseminating information concerning the University of Notre Dame and its athletic programs and for any other product or service marketed or provided by the Corporation.

The Employee then, in addition to any other limitation, regardless of the circumstances of the termination of his employment with the Corporation, specifically agrees that:

> A. He will not, whether during the term of his employment or subsequent to the termination of his employment, in any fashion, form or manner, either directly or indirectly, divulge, disclose or communicate to any person, firm or corporation, in any manner whatsoever, any information of any kind, nature of description, concerning any matters affecting or relating to the Corporation's business. Such matters include but are not limited to the names, addresses, telephone numbers or or particular desires or needs of customers or advertisers of the Corporation, the prices charged or costs associated with the Corporation's services or products, or information concerning product or market development and distribution without regard to the probability that any or all of the foregoing matters would not be deemed confidential, material or important enough to warrant protection as a trade secret in the absence of a written agreement designating such information as "Confidential" and expressly restricting the use of such information. Therefore, this Agreement is intended to afford the Corporation with certain protections that it would otherwise not be entitled to and with this purpose in mind, the parties hereto stipulate that, as between them, the same are important, material and confidential, and gravely affect the successful conduct of the Corporation's business and its goodwill, and that any breach of the terms of this subparagraph is a material breach of this Agreement. This subparagraph will not be deemed to prevent the Employee from disclosing such matters if such disclosure is necessary to the Corporation's business and to the performance of the Employee's duties under this Agreement, so long as such disclosure does not involve a trade secret or other theretofore undisclosed matter, and the Employee makes such disclosure

2

under circumstances and in a manner reasonably calculated to benefit the Corporation, as opposed to the employee or actual or potential competitors of the Corporation.

**8. RESTRICTIVE COVENANTS.** The Corporation and employee agree that the Corporation is engaged in publishing a news magazine devoted primarily to covering the University of Notre Dame and its athletic programs and related literature and information (the "Corporation's Business") and information services and has built up and established a valuable and extensive trade in this market. The Employee expressly agrees as further consideration of his continued employment the payment of his wages and the agreement to pay benefits as herein provided, if the Employee's relationship with the Corporation terminates for any reason, then for a period of two (2) years thereafter the Employee shall not and he agrees that he will not, directly or indirectly, do any of the following:

(A) Own an interest in, operate, join, control or participate in, or be connected as an officer, employee, agent, independent contractor, partner, shareholder or principal of or in any corporation, partnership, proprietorship, firm, association or other entity, developing, soliciting orders for, selling, distributing, or otherwise marketing products, goods and/or services which directly or indirectly, compete with the Corporation's Business, including but not limited to the operation of any internet/website service or the employment for any internet/website organization. The Employee acknowledges that in view of the scope of the Corporation's Business, the area in which the Employee shall be precluded from competing is both reasonable and reasonably required for the protection of the Corporation.

(B) Own an interest in, operate, join, control or participate in, or be connected as an officer, employee, agent, independent contractor, partner, shareholder or principal of or in The South Bend Tribune, The Irish Sports Report, Schurz Communications or any entity affiliated with or under common ownership or control of any of the foregoing.

(C) Induce or influence or attempt to induce or influence, any person who is engaged as an employee, agent, broke, independent contractor or otherwise by the Corporation, to terminate his or her engagement or to engage or otherwise participate in a business actively, directly or indirectly, competitive with the Corporation's business.

(D) Either for himself or for any other person, firm or corporation, divert or take away, or attempt to divert or take away, call upon or solicit or attempt to call upon or solicit, any of the customers of advertisers of the Corporation, or potential customers or advertisers of the Corporation, or distributors of the Corporation's products or services, whom he called upon or whom he solicited or with whom he became acquainted while in the employ of the Corporation.

(E) Make any use of the information described in subparagraph 7(A) above or cause or attempt to cause any other person to use such information, for purposes other than the business of the Corporation; or

3

(F) Undertake planning for or organization of any business activity competitive with the Corporation's business, or combine or conspire with other employees of the Corporation for the purpose of organizing any such competitive business activity.

It is further agreed that the restrictive covenants contained in this paragraph 8 shall be limited to the Continental United States. The parties agree and acknowledge that the above restrictive covenants are both reasonable and necessary to protect the interests of the Corporation as to geographical area, scope of restricted activity and duration.

Nothing contained in this paragraph 8 shall be deemed a waiver of the Employee's obligation under paragraph 7 above, and in the event of any conflict or inconsistency between the provisions of this paragraph 8 and paragraph 7 above, the provisions of paragraph 7 above shall control.

9. **BOOKS AND RECORDS.** In the event of termination for any reason, the Employee shall deliver promptly to the Corporation the originals and all copies of any notes, books, correspondence, lists of customers, distributors and advertisers, lists of potential customers, distributors and advertisers and all other records whether written, magnetic or otherwise relating to the Corporation's business which are in the Employee's possession or under his control as of the date of termination.

10. **SEVERABILITY.** The Corporation and Employee agree that the restrictive covenants contained in paragraphs 7, 8 and 9 above are severable and separate, and the unenforceability of any specific covenant herein shall not affect the validity of any other covenant set forth herein. These covenants on the part of employee shall be construed as an agreement independent of any other provision in this Agreement, and the existence of any claim or cause of action of Employee against the Corporation, whether predicated on this Agreement or otherwise, and shall not constitute a defense to the enforcement by the Corporation of said covenants.

If any Court of competent jurisdiction shall determine that the time period or the territory herein restricting competition is unreasonable, said covenants shall not be determined to be null and void and of no effect, but shall be reformed by said Court to impose a reasonable time period or reasonable territorial limitation, as the case may be.

11. **SURVIVAL OF COVENANTS.** This Agreement shall be binding upon and inure to the benefit of any successors or heirs or representatives of the parties hereto. The restrictive covenants and promises of the Employee contained in this Agreement shall survive any termination or recission of this Agreement unless the Corporation executes a written agreement specifically releasing the Employee from such covenants. Provided, however, in the event that the ownership of the Corporation is transferred prior to expiration of the two (2) year restrictive period, Employee shall be released from restriction under paragraph 8 after one (1) year if the Corporation is sold to anyone other than Schurz Communications.

12. **LEGAL AND EQUITABLE RELIEF.** The parties hereby acknowledge and agree that in the event of the breach by Employee of any of the restrictions contained in paragraphs 7,

4

8 or 9 above of this Agreement, the Corporation shall be entitled to injunctive and equitable relief both during dependency of the action and permanently, without the necessity for the posting of bond, or other security, since the remedy at law would be inadequate and insufficient to prevent a breach of this Agreement, or any part of it, and to secure the enforcement of this Agreement. In addition, the Corporation bringing such action shall be entitled to such other remedies in law, in equity, or under this Agreement, as may be available, including, without limitation, reasonable attorney fees and such damages as it can show that it has sustained by reason of such breach.

13. **ENTIRE AGREEMENT.** This Agreement constitutes the entire Agreement between the parties and no other agreements, written or oral exist.

14. **MODIFICATION.** This Agreement may be altered by written agreement only.

15. **INDIANA LAW.** This Agreement shall be interpreted by the laws of the State of Indiana and no provision in this Agreement shall be interpreted for or against any party because that party or its legal representative drafted the provision.

16. **DESCRIPTION HEADINGS.** The descriptive headings used herein are for convenience only and in no way limit or enlarge the scope or meaning of the language hereof.

"CORPORATION"                             "EMPLOYEE"

By: _____               By: _____

Its President

5