# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT FIRTH, FAN ACTION, INC., and BLUEANDGOLD.COM, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:10CV75-PPS/CAN ) |
| YAHOO! INC. d/b/a RIVALS.COM, TIM PRISTER, JACK FREEMAN, PETE SAMPSON, SHANNON TERRY, and BOBBY BURTON, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Robert Firth owns Fan Action, Inc., which produced the website BlueandGold.com to report on University of Notre Dame sports.[1] Firth claims that he was injured when the search engine Yahoo stole his employees and set up a competing website. Firth has sued Yahoo and its wholly owned subsidiary Rivals.com, along with two of Rivals.com's executives. In addition, Firth has sued three of his former employees who now work for Rivals.com. I previously granted a motion to dismiss eight of Firth's original ten claims. In Firth's second attempt at pleading, he pared his original ten-count complaint down to three counts, one for breach of contract and two RICO claims. All defendants have again filed motions to dismiss. I find that the RICO claims are barred by the statute of limitations and that the breach of contract claim fails to state a claim against any defendant except Yahoo! Inc., and then only as to the second of the two agreements between the parties.

---

[1] As in plaintiffs' own pleading, my references to "Firth" or "plaintiff" in the singular may be understood to encompass the three plaintiffs collectively.

# I. BACKGROUND

Defendants Tim Prister, Jack Freeman, and Pete Sampson worked for Fan Action as an Editor, Webmaster, and Sportswriter, respectively. Defendants Shannon Terry and Bobby Burton are the Chief Executive Officer and Chief Operations Officer for Rivals.com, a website that hosts other websites covering college sports. Defendant Yahoo! Inc. owns Rivals.com.

According to the First Amended Complaint, Fan Action and Rivals began their relationship on August 18, 2001, when they entered into the first of two Network Affiliate Agreements (NAA). The NAAs established Fan Action as the official Notre Dame affiliate on Rivals' website. Pursuant to the NAAs, Blue and Gold Illustrated as publisher of the website was to be compensated by a percentage of subscription and ad revenues generated by the website.

The parties signed the second agreement on August 18, 2003. This second agreement contained a Notice of Non-Renewal option that had to be exercised at least 90 days before the end of the contract term. Exercising that option, Rivals gave a Notice of Non-Renewal to Fan Action on May 9, 2005. Within the next two days, Freeman and Sampson both quit their jobs at Fan Action without notice, and immediately started working for Rivals. Prister quit the next month on June 28, 2005, but told Firth that he intended to "wait out" the non-compete provision in his employment contract. (Eventually, Prister began working for Rivals in July 2006). On August 14th, Sampson told subscribers that the partnership between the sites was going to end, and that Rivals had hired several former employees of BlueandGold.com.

When the second NAA expired on August 18th at midnight, Rivals.com's official Notre Dame affiliate became the Rivals-owned website IrishIllustrated.com. Launching the new website, Sampson and Freeman characterized the shift as merely a change in the name of the site. Firth

# I. BACKGROUND

Defendants Tim Prister, Jack Freeman, and Pete Sampson worked for Fan Action as an Editor, Webmaster, and Sportswriter, respectively. Defendants Shannon Terry and Bobby Burton are the Chief Executive Officer and Chief Operations Officer for Rivals.com, a website that hosts other websites covering college sports. Defendant Yahoo! Inc. owns Rivals.com.

According to the First Amended Complaint, Fan Action and Rivals began their relationship on August 18, 2001, when they entered into the first of two Network Affiliate Agreements (NAA). The NAAs established Fan Action as the official Notre Dame affiliate on Rivals' website. Pursuant to the NAAs, Blue and Gold Illustrated as publisher of the website was to be compensated by a percentage of subscription and ad revenues generated by the website.

The parties signed the second agreement on August 18, 2003. This second agreement contained a Notice of Non-Renewal option that had to be exercised at least 90 days before the end of the contract term. Exercising that option, Rivals gave a Notice of Non-Renewal to Fan Action on May 9, 2005. Within the next two days, Freeman and Sampson both quit their jobs at Fan Action without notice, and immediately started working for Rivals. Prister quit the next month on June 28, 2005, but told Firth that he intended to "wait out" the non-compete provision in his employment contract. (Eventually, Prister began working for Rivals in July 2006). On August 14th, Sampson told subscribers that the partnership between the sites was going to end, and that Rivals had hired several former employees of BlueandGold.com.

When the second NAA expired on August 18th at midnight, Rivals.com's official Notre Dame affiliate became the Rivals-owned website IrishIllustrated.com. Launching the new website, Sampson and Freeman characterized the shift as merely a change in the name of the site. Firth

alleges that Freeman directed search engines to find the new IrishIllustrated.com when users searched for Fan Action websites. According to the Amended Complaint, Rivals has continued to try to bring other Fan Action employees over to work on IrishIllustrated.com. On February 20, 2008, Firth's former employee, Dave Follett, told him that Freeman and Prister worked for Rivals while they were still under contract with Fan Action. Additionally, Follett told Firth that all the defendants had been planning since March 2005 to create IrishIllustrated.com to replace BlueandGold.com.

## II. DISCUSSION

### A. Standard of Review

The minimum requirements for pleading a claim for relief are contained in Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." But under Rule 12(b)(6), which authorizes the dismissal of a complaint for failure to state a claim, Firth's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). Indeed, the Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

The Seventh Circuit has cautioned courts not to "overread" *Bell Atlantic*. *See Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). *See also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). *Bell Atlantic* essentially "impose[s] two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. (quotation marks and ellipses omitted). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id*. (quotation marks omitted).

**B. RICO Claims**

The First Amended Complaint alleges a RICO violation under 18 U.S.C. §1962(c), based on the assertion that all defendants operated IrishIllustrated.com as an enterprise through which they conspired to facilitate the fraudulent and covert theft of Firth's internet business, its subscribers, its reputation, market value, and key employees. As a separate count, the First Amended Complaint alleges a violation of § 1962(d) of RICO for defendants' conspiracy to steal Firth's business. All defendants argue that the RICO claims should be dismissed for a host of reasons, including a failure to properly plead the racketeering acts – which are based on alleged mail and wire fraud violations – with particularity. I need not address these other perceived shortcomings in the Amended Complaint because I find that the RICO claims are time-barred.[2]

---

[2] I am mindful that "[d]ismissing a complaint as untimely at the pleading stage is an unusual step," but also that "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). In *Cancer Foundation*, the dismissal of RICO claims on statute of limitations grounds was affirmed over the plaintiffs' assertion (as here) of an equitable estoppel argument in opposition. *See also Prime Eagle Group Ltd v. Steel Dynamics*, 614 F.3d 375, 379 (7th Cir. 2010) [affirming dismissal on statute of limitations grounds, with equitable estoppel and equitable tolling arguments]; *Brooks v. Ross*, 578 F.3d 574, 578-79 (7th Cir. 2009) [taking up statute of limitations analysis even where the district court had not addressed or relied on the argument, and affirming dismissal]; *Middleton v. City of Chicago*, 578 F.3d 655, 657, 665 (7th Cir. 2009). Because "the relevant dates are set forth unambiguously" in the First Amended Complaint, I find it appropriate to consider the statute of limitations here. *Brooks*, 578 F.3d at 579.

4

**1. Accrual**

Claims under RICO are governed by a four-year statute of limitations period. *Jay E. Hayden Foundation v. First Neighbor Bank*, 610 F.3d 382, 383 (7th Cir. 2010). This limitations period begins to run once the plaintiff knew or should have known that he had been injured. *Jay E. Hayden Foundation*, 610 F.3d at 386; *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682, 688 (7th Cir. 2004). The plaintiff must also know the source of his injury. *Jay E. Hayden Foundation*, 610 F.3d at 386. However, the plaintiff need not be aware that he was injured by a pattern of activity comprising a RICO violation. *Rotella v. Wood*, 528 U.S. 549, 554 (2000). Plaintiffs do not even have to know that their injury supports a legal claim, just that the harm itself had occurred. *Cancer Foundation, Inc.*, 559 F.3d at 675. The purpose of the four-year statute of limitations is for the plaintiff to discover the legal claims underlying the injury "upon which to base a suit." *Jay E. Hayden Foundation*, 610 F.3d at 387.

The acts that Firth alleges for the basis of his RICO claim culminated on August 19, 2005. On this date, Firth knew that his website on Rivals.com had "become" IrishIllustrated.com literally overnight [DE 22, ¶ 43]. Firth's alleged injuries occurred primarily between May 2005, when Rivals.com declined to renew its NAA with Firth, and August 2005, when IrishIllustrated.com became operational. During this time, Firth knew that the NAA had not been renewed, knew that Freeman and Sampson had left to work for Rivals, knew that Prister would begin working for Rivals.com as soon as his non-compete agreement expired, and knew that Rivals.com was using his subscribers' information for its new website [DE 22 at 7-9].

These are the injuries that begin the statute of limitations. Based on Firth's allegations in the First Amended Complaint, the statute of limitations began to run at some point during the summer of

2005, and certainly by August 19, 2005. At this point, Firth knew that he and his business suffered an injury at the hands of Rivals.com and his former employees. He did not have to be aware of a RICO conspiracy among all parties in order for the statute of limitations to begin running. *See Rotella*, 528 U.S. at 558 (2000). Firth had the following four years to investigate the circumstances surrounding the switch from BlueandGold.com to IrishIllustrated.com and determine what legal claims he could bring based on this injury. *See Jay E. Hayden Foundation*, 610 F.3d at 387. Accordingly, the original complaint, which was filed on February 4, 2010, was approximately six months too late. If the RICO claims are barred by the statute of limitations as determined from Firth's own allegations, they are subject to dismissal as to all parties. *Brooks*, 578 F.3d at 579. Two arguments are raised in an effort to stave off that result.

### 2. Equitable Estoppel

Defendants may be unable to invoke the statute of limitations as an affirmative defense if they have engaged in conduct that prevented the plaintiff from gathering enough information to file his lawsuit. *Jay E. Hayden Foundation*, 610 F.3d at 385. To support the doctrine of equitable estoppel, defendants' conduct must be "active steps to prevent the plaintiff from suing." *Cancer Foundation*, 559 F.3d at 676. Furthermore, this conduct must be causally related to the plaintiff's inability to gather information. *Jay E. Hayden Foundation*, 610 F.3d at 385. If the defendant's conduct does not keep the plaintiff from discovering his claim or if the conduct occurs after the plaintiff has or should have discovered his claim, equitable estoppel does not apply. *Id.* Firth asserts that "fraudulent concealment equitably tolls the running of the limitations period in RICO actions if the plaintiff has exercised reasonable diligence in respect of its RICO claim." [DE 22, ¶ 21] (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)). But here Firth fails to allege any "active

step" that defendants took to keep him from filing his lawsuit or to show his reasonable diligence in investigating the injuries he was aware of no later than August 19, 2005.

In the First Amended Complaint, Firth alleges that he discovered how all of the pieces fit together from Dave Follett on February 20, 2008 [DE 22, ¶ 22]. He says nothing about any action taken to keep him from discovering those connections earlier, or any investigative action on his part establishing his reasonable diligence. Furthermore, in his responses to the motions to dismiss, Firth alleges only general "secrecy" on the part of defendants. Firth complains that he is unable to read minds; however, he does not indicate any attempt to discover information by any other method. Firth cannot claim equitable estoppel simply because he did not have the information he wanted. Defendants must have taken some active step to prevent Firth from getting the information that was necessary to file his lawsuit. *See Jay E. Hayden Foundation*, 610 F.3d at 385. The statute of limitations bar is not overcome by equitable estoppel.

### 3. New and Independent Injury

The Seventh Circuit also recognizes a "separate accrual" rule, allowing a separate cause of action with its own statute of limitations when a separate injury occurs. *McCool v. Strata Oil Company*, 972 F.2d 1452, 1465 (7th Cir. 1992). Application of this rule requires both "a new instance of wrongful conduct *and* a new injury." *Id.* at 1465, n.10 (emphasis in original). But Firth cannot use a new injury to reach previous wrongful acts that occurred outside the statute of limitations. *Klehr*, 521 U.S. at 190.

In opposition to dismissal, Firth argues that the continued solicitation of Fan Action employees constituted a new and independent injury, and that the operation of IrishIllustrated.com is a fresh injury to plaintiffs every day. But these are simply continuations of the same injuries that

7

originally formed the basis of Firth's claim. And the essence of Firth's claim is to recover for defendants' actions around August 2005. If Firth could use the new and independent injury doctrine to bring in the "continuing" injuries, he could not recover for the old injuries at the same time. Even a new injury cannot save claims that are outside the statute of limitations; it only allows a new statute of limitations for that new injury. Because Firth only alleges "continuations" of earlier injuries, Firth does not show that new and independent injuries save his RICO claims from the four-year statute of limitations. Accordingly, both RICO claims are barred by the statute of limitations and will be dismissed as against all defendants.

**C. Breach of Contract Claim**

    **1. Individual Defendants**

Firth's breach of contract claim is based on the NAAs he signed with Rivals.com. His prior employees – Defendants Prister, Freeman and Sampson – were not parties to these contracts. In Firth's response to these defendants' Motion to Dismiss, he concedes that: "Plaintiffs recognize that Defendants Prister, Freeman and Sampson are not liable. They were not in privity of contract and the breach was committed by Rivals." [DE 44 at 7]. Since Firth himself acknowledges that he has no claim for breach of the NAAs against these defendants, the breach of contract claim will be dismissed against defendants Prister, Freeman, and Sampson.

Similarly, no breach of contract claim lies against defendants Terry and Burton, the Rivals.com executives. There is no reference whatsoever to Burton in the NAAs, and plaintiffs "recognize that Defendant Terry signed on behalf of the corporation and is not individually liable." [DE 41, p.8]. So Firth's breach of contract claim will also be dismissed as to Terry and Burton.

8

**2. Defendant Yahoo! Inc.**

Yahoo challenges the breach of contract claim on statute of limitations grounds. It also claims that the Amended Complaint is so confusingly pled that it fails to state a claim. The parties agree that Tennessee law governs substantive issues in the NAAs, but disagree as to which state's law governs the statute of limitations. Yahoo contends that Tennessee's six-year statute of limitations for breach of contract applies. TENN. CODE ANN. § 28-3-109(a)(3). Firth would apply Indiana's ten-year statute of limitations for breaches of contract. IND. CODE ANN. § 34-11-2-1.

"When faced with a conflicts of law issue, a federal court must apply the choice of law provisions from the state in which it sits." *Bailey v. Skipperliner Industries, Inc.*, 278 F.Supp.2d 945, 951 (N.D.Ind. 2003) [Nuechterlein, J.]. "Indiana choice of law rules state that the statute of limitations of the forum state, Indiana, will apply." *Autocephalous Greek-Orthodox Church v. Goldberg & Feldman Fine Arts Inc.*, 717 F.Supp. 1374, 1385 (S.D.Ind. 1989), quoted in *Bailey*, 278 F.Supp.2d at 951. In Indiana, contractual choice-of-law provisions apply only to the substantive law governing claims arising out of the contract, but the statute of limitations is a procedural matter subject to the law of the forum state. *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1157-58 (Ind.Ct.App. 2010). The breach of contract claim is therefore subject to the ten-year statute of limitations for actions upon contracts in writing, as set forth in IND. CODE ANN. § 34-11-2-11. As to both NAAs then, the breach of contract claim first asserted in the original complaint filed in February 2010 is timely.

The closer question is whether Firth has stated a claim for breach of contract which can survive Yahoo's motion to dismiss. In opposition to the motion, Firth clarifies that the breach of contract claim is based on the implied duty of good faith, rather than any particular express provision

of either NAA. Tennessee law governs the substantive law as to Firth's claim for breach of contract. "Tennessee law imposes a duty of good faith in the performance of contracts." *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). The duty of good faith may consist of different requirements based on the individual contract. *Id*. The parties' intent and the contract's language are important to determine a fair and reasonable interpretation of what the contract requires as part of the duty of good faith. *Id.* This duty protects both the reasonable expectations of parties entering into a contract and "the rights of the parties to receive the benefits of the agreement they entered into." *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 642-643 (Tenn.Ct.App. 2006). Therefore, a party to a contract may take no actions that impair the other party's enjoyment of its benefits from the contract. *Elliott v. Elliott*, 149 S.W.3d 77, 85 (Tenn.Ct.App. 2004). However, this duty does not give new rights under the contract or change the rights provided for in the contract. *Lamar Advertising Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn.Ct.App. 2009).

For example, it violates the duty of good faith for a defendant to promote a competing insurance plan while under contract with the plaintiff to promote another plan. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.Ct.App. 1995). Because Winfree relied on sales commissions for payment, the Credit Union's switch to a rival insurance plan removed the primary benefit Winfree received from the contract. *Id*. The court held that the defendant's promotion of the competing plan before the contract's expiration (even though within the notice-of-cancellation period at the contract's end) constituted a failure to exercise good faith for the length of the contract period because "defendants intentionally interfered with plaintiff's receipt of the *only* 'fruit' of the contract which was intended for him." *Id. (*emphasis in original).

With respect to Firth's claim on the first NAA, it does not appear plausible that Firth can recover. The complaint's only claim of wrongdoing under the first NAA is that Yahoo hired Tim Prister as an independent contractor, in violation of his employment contract with Fan Action [DE 22, ¶ 95]. Prister did not leave Firth's employment at that time, however, and there is no indication that Firth somehow lost the benefit of his bargain under the first NAA. In Firth's response to Yahoo's motion to dismiss, he cites only fraud and "bad faith activities" under the *second* NAA as the factual basis for the claim of breach. [DE 45, pp.16 & 17]. As Firth's allegations could not support a conclusion that Yahoo interfered with Firth's reasonable expectations under the first NAA or the benefits contracted for, no plausible claim is stated for breach of the first NAA's duty of good faith, and that much of the breach of contract claim against Yahoo is subject to dismissal.

However, it is at least plausible that Firth could recover on his breach of contract claim under the second NAA. Just as in *Winfree*, Firth contracted with Yahoo to provide a specific service, and Yahoo planned behind Firth's back to offer the same service itself. Also, like in *Winfree*, Firth relied on subscription fees as the benefit of his contract, which Yahoo could keep to itself after creating a competing service. Firth has alleged that Yahoo planned to create a website to replace his during the period of the second NAA [DE 22, ¶ 97-98]. Compared with the conduct in *Winfree* that the Tennessee Court of Appeals found to be a breach of the duty of good faith, Firth has minimally stated a claim for relief against defendant Yahoo! Inc. under the applicable Tennessee law. Yahoo's motion to dismiss will be denied as to the breach of contract claim based on the duty of good faith and fair dealing under the second NAA. Of course, the claim may nonetheless fail at the summary judgment stage, if the evidence cannot support a finding that Yahoo's intentional

conduct interfered with Firth's receipt of the fruits of the contract *during its term*, as opposed to after its expiration.

## CONCLUSION

Because the four-year statute of limitations on Plaintiffs' RICO claims began to run no later than August 19, 2005, all Defendants' **Motions to Dismiss [DE 34, 36 & 39]** are GRANTED as to the RICO claims.

Because Defendants Prister, Sampson, and Freeman were not parties to either Network Affiliate Agreement, these Defendants' **Motion to Dismiss [DE 36]** is GRANTED as to the breach of contract claim, and all claims against Prister, Sampson and Freeman are dismissed.

Because Defendants Terry and Burton are not individually liable on the Network Affiliate Agreements, these Defendants' **Motion to Dismiss [DE 34]** is GRANTED as to the breach of contract claim, and all claims against Terry and Burton are dismissed.

Concerning the breach of contract claim, Defendant Yahoo! Inc.'s **Motion to Dismiss [DE 39]** is GRANTED IN PART with respect to the parties' first agreement, as to which no plausible claim is stated. Yahoo! Inc's **Motion to Dismiss [DE 39]** is DENIED IN PART with respect to the parties' second agreement, and that portion of the breach of contract claim survives as against Yahoo! Inc.

**SO ORDERED.**

**ENTERED:** November 30, 2010

　　　　　　　　　　　　　　　　　　　　　／s/ Philip P. Simon　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　PHILIP P. SIMON, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT