# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| FAN ACTION, INC. d/b/a Blue and Gold Illustrated d/b/a BlueandGold.com, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:10CV75-PPS/CAN<br>) |
| YAHOO! INC. d/b/a Rivals.com, | )<br>) |
| Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff Fan Action filed a Second Amended Complaint (DE 67) alleging breach of contract, breach of implied duty of good faith and fair dealing, and unfair competition. Defendant Yahoo has filed a Motion to Dismiss (DE 71) pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) the breach of contract claim is too vague to be plausible on its face, failing to provide notice to Yahoo as to the nature of the claim, (2) the breach of implied duty of good faith and fair dealing has been pled outside the limits on such a claim recognized in my previous opinion (DE 48 at 11), and (3) the unfair competition claim has already been dismissed with prejudice (DE 19 at 5), fails to state a claim under applicable state law, and in any event is time-barred.

I find that the Second Amended Complaint comports with Fed. R. Civ. P. 8 by stating claims plausible on their face and that the unfair competition claim is an entirely new claim not shown at this stage of the proceedings to be time-barred. I will therefore deny Yahoo's motion.

**BACKGROUND**

Robert Firth founded the company Fan Action which established a national paid subscription newspaper (Blue and Gold Illustrated) and a paid subscription website (BlueandGold.com) which concentrated on Notre Dame football. (DE 67 ¶¶5-7). Defendant Rivals.com is a wholly-owned subsidiary of Yahoo! Inc. which hosts 150 websites covering college sports teams (DE 22 ¶10).

Rivals contacted Fan Action in 2001 seeking to enter into an agreement whereby Fan Action would become the exclusive Notre Dame affiliate for the Rivals network. (DE 67 ¶9). An official relationship began when Fan Action entered into a two-year "Network Affiliate Agreement" with Rivals in 2001, and this relationship continued when Fan Action entered into another two-year agreement with Rivals beginning on August 18, 2003 (hereinafter referred to as "Second NAA"). (*Id.* at ¶¶10-11). The Second Amended Complaint claims that Fan Action retained and owned all right, title, and interest in the content produced by Fan Action on BlueandGold.com and that Rivals was only granted an exclusive license to use and reproduce the content during the term of the Second NAA. (DE 67 ¶¶12-13).

Fan Action asserts that prior to the termination of the Second NAA, which occurred on August 18, 2005, Rivals notified subscribers of BlueandGold.com that the web address would change from BlueandGold.com to notredame.rivals.com or IrishIllustrated.com on August 19, 2005. (*Id.* at ¶¶15-16). Fan Action also contends that Rivals formed IrishIllustrated.com during the term of the Second NAA and did so by hiring Fan Action employees and by utilizing Fan Action's subscriber lists. (*Id.* at ¶19). So in substance, Fan Action claims that Rivals raided their employees, created a website covering Notre Dame football that directly competed with Fan

Action's sites and then wrongfully directed its customers to the new website and in the process caused substantial damage to Fan Action.

## DISCUSSION

The minimum requirements for pleading a claim for relief are contained in Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." But under Rule 12(b)(6), which authorizes the dismissal of a complaint for failure to state a claim, Fan Action's obligation to provide the grounds of its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Nonetheless, the Seventh Circuit has cautioned courts not to "overread" *Twombly*. *See Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). *Twombly* essentially "impose[s] two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. (quotation marks and ellipses omitted). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id*. (quotation marks omitted).

**Count I – Breach of Contract**

Yahoo's briefest challenge is to the breach of contract claim in Count I. The claim asserts four ways in which Rivals breached the parties' Second NAA:

(1)     by failing and refusing to return all content provided by Fan Action upon the expiration of the Second NAA (¶22);

(2)     by continuing to use and reproduce the content provided by Fan Action following the expiration of the Second NAA (¶23);

(3)     by failing to fully account for and compensate Fan Action for deferred liability subscriptions (¶24); and

(4)     by failing to return to Fan Action all information relating to the identity of third parties who visited, registered or subscribed to BlueandGold.com (¶25).

Yahoo argues that the claim is insufficient because it fails to identify the particular provisions of the agreement allegedly breached. Yahoo is unable to cite any authority requiring that degree of specificity in pleading a breach of contract claim.

Next Yahoo quarrels about the vagueness of the "content"allegedly retained. Elsewhere the Second Amended Complaint alleges that pursuant to the Second NAA, Fan Action "owned all right, title and interest in the content produced by Fan Action utilized on BlueandGold.com including, but not limited to, all written articles, photographs and programming developed by Fan Action." (DE 67, ¶12). Considered together, the allegations about content are sufficient to give Yahoo fair notice of what the alleged breach is in this regard and the grounds upon which it rests. The specifics as to which, if any, articles, photographs and programming were or were not retained in breach of the Second NAA is a subject for discovery. While the "content" wrongly kept will have to be narrowed down and more specifically spelled out to survive summary judgment, this is not summary judgment.

To the extent Yahoo complains that it doesn't recognize the term "deferred liability subscriptions," Fan Action has responded by clarifying that it merely refers to unpaid subscription revenue allegedly owed under the Second NAA. (DE 74 at 19). This unclear terminology, now defined, does not render the claim subject to dismissal.

Finally with respect to the breach of contract claim in Count I, Yahoo argues that the agreement made both parties co-owners of the third party identifying information so that Yahoo was not obliged to return it after the expiration of the Second NAA. This is an argument on the merits of one species of breach alleged and is a matter to be addressed on summary judgment rather than at the motion to dismiss stage of the proceedings.

Yahoo's arguments fail to demonstrate that Count I should be dismissed under the applicable pleading standards. The Second Amended Complaint provides notice of the alleged breach to Yahoo and pleads a right to relief based on more than just a basketful of conclusory allegations.

**Count II – Breach of the Implied Duty of Good Faith and Fair Dealing**

Due to the choice-of-law provision in the Second NAA, Tennessee law provides the substantive law governing Count II, Fan Action's claim for breach of implied duty of good faith and fair dealing. "Tennessee law imposes a duty of good faith in the performance of contracts." *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). The requirements of the duty of good faith vary based on the individual contract. *Id*. The parties' intent and the contract's language help determine a fair and reasonable interpretation of what the contract requires as part of the duty of good faith. *Id.* This duty protects both the reasonable expectations

of parties entering into a contract and "the rights of the parties to receive the benefits of the agreement they entered into." *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 642-643 (Tenn. Ct. App. 2006). Therefore, a party to a contract may take no actions that impair the other party's enjoyment of its benefits from the contract. *Elliott v. Elliott*, 149 S.W.3d 77, 85 (Tenn. Ct. App. 2004). However, this duty does not give new rights under the contract or change the rights provided for in the contract. *Lamar Advertising Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009).

For example, it violates the duty of good faith for a defendant to promote an insurance plan while under contract with the plaintiff to promote its own plan. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995). In that case, Winfree relied on commissions for the sale of insurance plans by a credit union. But when the credit union abruptly switched to a rival insurance plan this removed the primary benefit Winfree received from the parties' contract. *Id*. The court held that the credit union's promotion of the competing plan before the contract's expiration constituted a failure to exercise good faith for the length of the contract period because "defendants intentionally interfered with plaintiff's receipt of the *only* 'fruit' of the contract which was intended for him." *Id.* (emphasis in original).

After comparing *Winfree* to the case at bar, I have determined (for the second time–*see* DE 48 at 11), that it is at least plausible that Fan Action could recover on its claim of implied duty of good faith and fair dealing under the Second NAA. Just as in *Winfree*, Fan Action contracted with Yahoo to provide a specific service, and Yahoo allegedly planned behind Fan Action's back to offer the same service itself. Also, like in *Winfree*, Fan Action relied on subscription fees as the benefit of the contract, which fees Yahoo could keep for itself after

6

creating a competing service. Ruling on a previous motion to dismiss, I noted that this type of claim "may nonetheless fail at the summary judgment stage, if the evidence cannot support a finding that Yahoo's intentional conduct interfered with Firth's receipt of the fruits of the contract *during its term*, as opposed to after its expiration." (DE 48 at 11-12 (emphasis in original)).

Despite Yahoo's contention that Count II runs afoul of the limitation noted in my previous order, Fan Action has expressly alleged that *during the period of the Second NAA*, Yahoo formed its website IrishIllustrated.com by hiring Fan Action employees, utilizing Fan Action's subscriber lists, and diverting internet traffic from BlueandGold.com. They accomplished this by using multiple domain names allegedly owned by Fan Action to direct internet traffic to Yahoo's newly created website. (DE 67 ¶19). In a related allegation, Fan Action also contends that Yahoo did not pay over all the subscription revenue owed under the Second NAA, which may constitute interference with Fan Action's receipt of the fruits of the contract during its term. Compared with the conduct in *Winfree,* which the Tennessee Court of Appeals found to be a breach of the duty of good faith, Fan Action has minimally stated a claim for relief against Defendant Yahoo under the applicable Tennessee law. Yahoo's motion to dismiss will be denied as to the breach of implied duty of good faith and fair dealing under the second NAA.

**Count III – Unfair Competition**

Count III is for unfair competition. Previously, I dismissed an unfair competition claim with prejudice. The previous claim was determined actually to have been based on

7

misappropriation of trade secrets, thereby rendering it preempted by IND. CODE § 24-2-3-1(c) and time-barred by the three-year statute of limitations of IND. CODE § 24-2-3-7. (DE 19, p.5). Yahoo mistakenly argues that the conduct alleged in Count III is essentially the same as alleged in the previously dismissed claim, and that Count III is still time-barred based on the earlier ruling. This is not the case, however. The unfair competition claim pled in the Second Amended Complaint is a common law claim of unfair competition, significantly different from what was previously pled and dismissed. Essentially, it is a new claim. So a fresh statute of limitations analysis is required.

Yahoo invokes Tennessee's three-year statute of limitations for common law claims of unfair competition. This is despite my indication in the last order that "Indiana choice of law rules state that the statute of limitations of the forum state, Indiana, will apply." *Autocephalous Greek-Orthodox Church v. Goldberg & Feldman Fine Arts Inc.*, 717 F.Supp. 1374, 1385 (S.D.Ind. 1989). Yahoo's approach may be taken partly because there is no clear authority – at least Yahoo has not pointed me to any and I have found none on my own – as to what the applicable statute of limitations is for a claim of unfair competition under Indiana law.

In any event, the statute of the limitations is an affirmative defense, and "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management*, *LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). Fan Action's new unfair competition claim has not pled itself out of court. The Second Amended Complaint admittedly refers to a number of events in or

before 2005 but it is not clear from the pleading that some of the conduct arguably supporting the unfair competition claim did not continue thereafter, perhaps even to the present time. Further, the Second Amended Complaint does not contain allegations plainly indicating when Fan Action knew or should have known of its injury by unfair competition. Yahoo does not offer a careful analysis of when the cause of action accrued and how the statute of limitations should be applied. For all these reasons, I conclude that Count III is not subject to dismissal on statute of limitations grounds.

Finally, Yahoo challenges Count III as failing to state an unfair competition claim under Tennessee law. This of course presumes that Tennessee law governs. The argument is that Tennessee recognizes only one species of unfair competition, namely "palming off" or passing off one's good as those of another, causing actual consumer confusion. Because the parties' websites had different names, Yahoo concludes that no "palming off" claim could possibly be stated by Fan Action's allegations. Further, Yahoo argues that the Second Amended Complaint alleges only an intention to cause confusion, not any actual consumer confusion. This challenge to Count III fails.[1]

Assuming without deciding that Tennessee law governs (although Fan Action vigorously contends that Indiana law applies), unfair competition claims are not so limited under Tennessee law as Yahoo suggests. In both Indiana and Tennessee, the claim of unfair competition is a subspecies of tort relating to improper interference with business or contractual relations. *See Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011); *PHG*

---

[1] In its reply brief, Yahoo sidesteps any attempt to persist in this failure-to-state-a-claim argument, and may thereby have abandoned it. I nonetheless address it to explain why I find it unpersuasive.

*Technologies, LLC v. St. John Companies, Inc.*, 459 F. Supp. 2d 640, 644 (M.D. Tenn. 2006). While Indiana's version of unfair competition is somewhat broader than Tennessee's, the claim can be alleged in both states as a result of either "palming off" one's goods or services as those of somebody else or based on an employee's use of confidential information obtained through former employment for the benefit of the employee or a competitor of the former employer. *See Meridian Fin. Advisors*, 763 F. Supp. 2d at 1064; *PHG Technologies. LLC*, 459 F. Supp. at 644; *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006); *B&L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 215 (Tenn. Ct. App. 2005).

As for the first of these two types of unfair competition, the difference in names between Fan Action's and Yahoo's websites does not necessarily defeat a palming-off claim if Yahoo is shown to have led consumers to believe its website (by whatever name) was actually the product of Fan Action. Such a possibility is inherent in the allegation that Rivals notified subscribers of Fan Action's website that the web address would change to what was actually Rivals' website. (DE 67 ¶16). This "attempted to create confusion concerning the source of the IrishIllustrated.com website," and could constitute palming off. (*Id.* at ¶31).

In addition, allegations of the Second Amended Complaint might support the second sort of unfair competition, involving use of confidential information by an employee or former employee to benefit a competitor. This is exactly what is alleged in ¶32 of Count III. Lastly, the allegations of intent to deceive coupled with actual diversion of internet traffic appear sufficient to state a plausible claim for relief on a theory that requires actual consumer confusion, even if the pleading lacked a formulaic recitation of this element of the cause of action. For all these

10

reasons, I find that the unfair competition claim has stated a claim to relief satisfying Rule 8 and survives Yahoo's motion to dismiss.

## CONCLUSION

Defendant Yahoo! Inc.'s Motion to Dismiss (DE 71) is **DENIED**.

**SO ORDERED**.

ENTERED: November 18, 2011

                                                   /s/ Philip P. Simon
                                        PHILIP P. SIMON, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT